IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VICKI L. NEISZ,                                  )   Civil No.: 3:11-cv-06036-JE
                                                 )
                              Plaintiff,          )   FINDINGS AND
                                                 )   RECOMMENDATION
                    v.                           )
                                                 )
MICHAEL J. ASTRUE,                               )
Commissioner of Social Security,                 )
                                                 )
                              Defendant.          )
_____)

      Kathryn Tassinari
      Mark A. Manning
      Harder, Wells, Baron & Manning, P.C.
      474 Willamette, Suite 200
      Eugene, OR 97401

          Attorney for Plaintiff

FINDINGS AND RECOMMENDATION - 1

S. Amanda Marshall, U.S. Attorney
Adrian L. Brown, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204-2902


Kathy Reif
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104

       Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff Vicki Neisz brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial

review of a final decision of the Commissioner of Social Security (the Commissioner) denying

her application for Social Security Disability Insurance Benefits (DIB) under the Social Security

Act (the Act).

For the reasons set out below, the Commissioner's decision should be reversed, and this

action should be remanded to the Social Security Administration (the Agency) for an award of

benefits.


## Procedural Background

Plaintiff filed her application for disability insurance benefits (DIB) on September 26,

2007, alleging that she had been disabled since January 1, 2007, because of neuropathy in her

hands and feet.  After her application had been denied initially and upon reconsideration,

Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ).


FINDINGS AND RECOMMENDATION - 2

A hearing was held before ALJ Don Harper on January 27, 2010.  The hearing was suspended, and was resumed and completed on March 9, 2010.  On March 25, 2010, ALJ Harper issued a decision finding that Plaintiff was not disabled within the meaning of the Act.  That decision became the final decision of the Commissioner on November 30, 2010, when the Appeals Council denied Plaintiff's request for review.  In the present action Plaintiff seeks review of that decision.

## Factual Background

Plaintiff was born on July 4, 1954, and was 55 years old when the ALJ issued his decision.  She graduated from high school, and has past relevant work experience in photo processing and retail sales.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One.  The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant

has a severe impairment, the Commissioner proceeds to evaluate claimant's case under Step Three.  20 C.F.R. § 404.1520(c).

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four.  20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the  claimant is able to perform work he or she has done in the past.  A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(e).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant. <u>Tackett</u>, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. <u>Id.</u>

## **Medical Record**

On May 19, 1999, Plaintiff saw Dr. Young Kho, a neurologist, for complaints of "dead feet," and a "pins and needles" sensation and burning pain over the bottoms of her feet and toes. Dr. Kho diagnosed idiopathic painful sensory neuropathy and prescribed Neurontin. In June, 2002, Plaintiff complained of numbness in her hands and fingers and pain in her left leg. Nerve conduction studies were normal. In August, 2004, Plaintiff complained of pain in her legs and cold feet. On August 24, 2004, Dr. Kho noted that Plaintiff had mild stocking glove type of pinprick sensation in her feet. He diagnosed idiopathic distal painful sensory neuropathy.

Plaintiff was examined by Judith Barefoot, a certified medical technician, on January 13, 2006. Plaintiff reported that she had recently left a 26-year relationship that had been marked by domestic violence. She was taking classes at a community college, and reported that she was having problems keeping up with her course work. Barefoot characterized her as histrionic, anxious, tearful, and "very difficult to follow."

On February 1, 2006, Plaintiff reported that she had neuropathy in her hands and feet, and said that her fingertips felt as if they were "on fire." Chart notes indicate that Plaintiff was tearful and anxious. Two weeks later she was described as appearing to be clearly in pain from a headache. Barefoot thought Plaintiff was having acute cluster migraines, which were likely triggered by hormonal changes and stresses.

FINDINGS AND RECOMMENDATION - 5

On February 27, 2006, Plaintiff was hospitalized after telling Barefoot that she had taken Trazadone and sleeping pills "hoping she would not wake up."  She was placed on a two-physician hold at Good Samaritan Hospital.  Hospital records indicate that Plaintiff became angry about this placement because she was responsible for the cost, had no money, had been out of work for two months, and thought things were "getting harder and harder."  Plaintiff reported painful migraine headaches with photophobia and phonophobia.  She reported that she had been married two times to abusive husbands, and said her second husband had held a shotgun to her head and made other death threats before the marriage ended in 2005.  Plaintiff said she drank alcohol occasionally, had used marijuana in the past, and had used methamphetamine "off and on" for some years.  At the time, she was taking Prozac, Wellbutrin, Stattera, Neurontin, and Trazadone.  Plaintiff was diagnosed with Major Depressive Disorder, moderate, recurrent; and was assigned a Global Assessment of Functioning (GAF) score of 49.

A CT scan taken on March 2, 2006 showed that Plaintiff had an acute intra-cerebral bleed, and an MRI confirmed a three-centimeter hemorrhage in the basal ganglia.  Dr. Richard Lafrance, a neurologist, diagnosed a hemorrhagic stroke with minimal deficit and carotid artery stenosis, which he thought was likely linked to Plaintiff's hypertension.  Plaintiff was discharged from the hospital on March 6, 2006, with a diagnosis of Major Depressive Disorder, moderate, recurrent; and Attention Deficit Disorder (ADD).

In late May, 2006, Plaintiff reported that she had memory problems, and was having problems at a new job that required "fairly quick thinking."  Plaintiff said she was having difficulty remembering names, was "blanking out" on information, and was worried because her supervisor was frustrated with her inability to retain information.

FINDINGS AND RECOMMENDATION - 6

During a visit on September 12, 2007, Plaintiff reported that she was more depressed, and wondered if her fluoxetine had stopped working.  Plaintiff reported that she had lost her job and her insurance, and complained of a severe, constant burning in her hands and feet.  Plaintiff said that she could not remember many simple work tasks, and her doctor noted that she had suffered brain damage from a stroke.  Claudia Carlson, FNP, diagnosed severe depression, hypertension, hyperlipidemia, peripheral neuropathy, and a cognitive deficit caused by "CVA [cerebral vascular accident] compounded with low abilities prior to this process creating a chronic unemployment problem."

In a letter dated September 22, 2007, FNP Carlson described Plaintiff's medical problems as severe.  Carlson stated that Plaintiff had a long-standing learning disability, severe neuropathy in her hands and feet, PTSD, and the complications of a stroke suffered the previous year, which Carlson opined had rendered Plaintiff unemployable.  She added that Plaintiff had "earnestly tried to work but has lost 5 jobs in the last four months because she cannot sustain concentration or perform the required physical tasks."  Ms. Carlson opined that Plaintiff was "most deserving of disability services for both physical and mental incapacity."

On October 10, 2007, Plaintiff reported that she felt "much calmer, much better" following a change in medication that Carlson had made during her previous visit.  Carlson opined that Plaintiff probably had bipolar depression.

In her notes of a visit on October 17, 2007, Carlson indicated that Plaintiff was having trouble understanding her medications.  Plaintiff reported memory problems, and Carlson characterized her thinking as "scattered."

At the request of the Agency, Dr. Alison Prescott, a licensed psychologist, performed a psychological evaluation of Plaintiff on November 22, 2007.  Plaintiff reported that she had been

FINDINGS AND RECOMMENDATION - 7

terminated after working one week for an electronics company the previous September because she was too slow, had lost her job at a call center in April, 2007, and had been told "not to return" by the temporary agency she had been working through. Plaintiff reported that she had been asked to leave or had been fired from a number of other jobs since her marriage had ended four years earlier. Plaintiff said she had neuropathy in her hands and feet, could only walk short distances, and had trouble remembering tasks she had been trained to do. Dr. Prescott described Plaintiff's speech as "somewhat loud and rambling" and noted that Plaintiff was easily distracted, her affect was "labile and mildly agitated," and she appeared to be very depressed.

Dr. Prescott's testing showed impairments in Plaintiff's short term memory and concentration. She demonstrated a low fund of information, and appeared "to be of Borderline Intellectual Functioning or lower." Plaintiff's verbal IQ score was 67, her performance IQ was 69, and her full scale IQ score was 65. Dr. Prescott noted that Plaintiff's full scale IQ was in the "Extremely Low range," found that she showed "low adaptive skills" for dealing with stress, and opined that she had symptoms of PTSD. She reported that Plaintiff struggled on most of the sub-tests, and noted that these scores were lower than expected in light of Plaintiff's prior functioning and school achievement. Dr. Prescott diagnosed Cognitive Disorder NOS; Major Depressive Disorder, recurrent; and Attention Deficit Disorder, primarily inattentive type.

In December, 2007, Dr. Kurt Brewster performed a physical examination at the request of the Agency. Plaintiff told Dr. Brewster that Neurontin had initially reduced her symptoms of peripheral neuropathy by 50%, but was only 25% effective by the time of the evaluation. She reported that neuropathy made it difficult for her to use her hands. Plaintiff also told Dr. Brewster that she had had a stroke 17 years earlier, and that she could not remember the results of an MRI that was taken a year and a half earlier. Dr. Brewster stated that "no workup for

evaluation by a neurologist" had been performed.[1]

Dr. Brewster noted that Plaintiff could write legibly and could pick up a paperclip from a flat surface. He found that her sensation to light touch was intact, except at the fingertips, and that she had some decreased sensation in her lower extremities. Dr. Brewster found some inconsistency in Plaintiff's effort. He diagnosed neuropathy, and found that Plaintiff could stand/walk for 6 hours in an 8 hour work day, could lift 10 pounds frequently and 20 pounds occasionally, and was limited to occasional reaching, grasping, pulling, lifting, and fine and gross motor activities.

Dr. Pamela Joffe, a psychologist, examined Plaintiff on January 7, 2008. Plaintiff reported that she was homeless, and had been selling her furniture for income. Dr. Joffe diagnosed Adjustment Disorder with depressed mood, and assessed Plaintiff's GAF score as 50.

Barbara Bryson, FNP, examined Plaintiff on February 6, 2008. Plaintiff reported pain and numbness in her arms with pressure across her chest. Plaintiff was working at a Dari-Mart at the time, and reported that the work was very difficult for her.

On February 21, 2008, Plaintiff went to an emergency treatment facility and reported that she had been sexually assaulted five days earlier. On March 6, 2008, Plaintiff told FNP Bryson about the assault. Bryon diagnosed PTSD, hypertension, and bipolar disorder, and provided Plaintiff Klonopin.

In a letter to the Oregon Department of Human Services dated September 6, 2008, Bryson stated that Plaintiff's CVA had left her with cognitive deficits, and that she was "unable to recall and process information, and to maintain concentration." Bryson added that Plaintiff

---

[1]As noted above, Dr. Richard Lafrance, a neurologist, diagnosed a hemorrhagic stroke in March, 2006.

had peripheral neuropathy which caused "pain with ambulation." She also reported that Plaintiff

had bipolar disorder, metabolic syndrome, hypertension, and PTSD.

At the request of the Agency, Dr. David Northway, a licensed psychologist, conducted a

neuropsychological evaluation on September 16, 2008. Dr. Northway reviewed Plaintiff's

medical records, including the evaluations by Drs. Prescott and Brewster noted above. He

reported that Plaintiff appeared to be honest and straight-forward in her presentation, but was

easily confused and "seemed to get some of her history scrambled." Dr. Northway observed that

Plaintiff was tearful at times, and was embarrassed by her poor testing performance.

Dr. Northway found that Plaintiff's score on a trail-making test placed her in the severely

impaired range, and that her full-scale IQ score of 74 placed her in the borderline mentally

retarded range. He observed that it was difficult to assess how Plaintiff's CVA affected these

scores, and that some of the differences between the scores he obtained and those from Dr.

Prescott's testing seemed too large to be accounted for by measurement errors. Dr. Northway

concluded that Plaintiff's performance on nonverbal subtests was valid, while the verbal subtests

showed inconsistencies in response style that rendered them invalid. He did not think that

Plaintiff had "intentionally tried to destroy her clinical picture," but may have been distracted,

fatigued, or "may have given up too easily on some items." Dr. Northway added that Plaintiff's

problems on verbal tasks were "not surprising given her diagnosis of attention deficit disorder."

He reported that Plaintiff processed information "extremely slowly," indicating that Plaintiff

would complete tasks more slowly and less efficiently than would her peers. Dr. Northway

characterized Plaintiff's communication skills as "somewhat scrambled," and observed that she

was both "confusing" and "confused." He diagnosed Bipolar 1 Disorder; Cognitive Disorder,

NOS, presumably secondary to CVA; Rule out PTSD; and Borderline Intellectual Functioning. He assigned a GAF score of 52.

During a visit on January 23, 2009, Plaintiff told Bryson that she had lost feeling in her feet and was falling more often.  Bryson diagnosed severe peripheral neuropathy, and noted that the condition was worsening even though Plaintiff was taking Neurontin.  In her chart notes, Bryson opined that Plaintiff "sorely deserves" disability benefits.  She added a prescription for antidepressants to address Plaintiff's depression.

On February 4, 2009, Plaintiff told Dr. Christoffer Poulsen that she was extremely depressed, experienced suicidal ideation, and had consumed 36 bottles of beer during the previous four days.  However, her blood alcohol test was negative.  Plaintiff was hospitalized, and an MRI taken showed prior right external capsule infarct.  Dr. Heather Hill, who ordered the MRI, opined that the infarct was causing "significant problems," and had cognitive effects which had "impacted her ability to maintain regular employment."

Dr. Thomas Boyd performed a neuropsychological examination on February 13, 2009. Dr. Boyd found that Plaintiff's verbal skills were in the "impaired" range, and that Plaintiff had significant difficulty finding words and expressing concepts.  Plaintiff's motor skills in a "groove peg placement" test were "well into the impaired range," and were below the first percentile bilaterally.  Dr. Boyd found that Plaintiff demonstrated mild cognitive impairment overall, and thought that this might be caused by a combination of neurological and emotional factors.  He opined that PTSD treatment might be the most promising intervention, and thought that it might be impossible to improve Plaintiff's cognitive functioning "or to get a sense of her potential employability at the competitive level" without addressing that impairment.  Dr. Boyd added that

he could not rule out a progressive disease, although he thought it unlikely that she had a "rapidly progressive neurological process."

Plaintiff sought treatment at Lane County Mental Health (LCMH) on March 2, 2009. In the record of her initial mental status examination, Plaintiff was described as pleasant, slow, sad, confused, dependent, and unsure of herself. Plaintiff reported that she often heard a man's voice telling her that she was worthless and deserved to die. Testing showed that Plaintiff's short term memory was impaired. Her insight was described as "limited," and a GAF score of 40 was assigned. Plaintiff was diagnosed with Major Depressive Disorder, recurrent, severe with psychotic features; PTSD; and Alcohol Abuse. Plaintiff began group and individual counseling. Daisy Rothgery, who testified at the hearing before the ALJ, was Plaintiff's case worker and counselor.

In a chart note dated March 9, 2009, Bryson indicated that testing confirmed that Plaintiff had diabetes mellitus.

## **Hearing Testimony**

### 1. **Plaintiff**

Plaintiff testified that she was working ten hours a week cleaning a house and taking care of another individual, under the supervision of Daisy Rothgery, her counselor. She said that she could not work more than she was working because she was depressed and could not remember things. Plaintiff testified that she felt burning and numbness in her hands and feet. She said that problems with her feet sometimes caused her to stumble and fall, and that the burning sensation in her hands sometimes made it difficult to hold things.

2. **Ms. Daisy Rothgery**

Ms. Rothgery, Plaintiff's case worker and counselor at Lane County Mental Health, testified that she had been using behavior therapy to deal with Plaintiff's depression and history of trauma, and was attempting to help Plaintiff "get her life back to as normal as possible" with community resources and job retraining. She testified that she thought it was good therapy for Plaintiff to get out of the house and "have some focus," working as a house cleaner for clients Ms. Rothgery selected. Ms. Rothgery said she supervised Plaintiff, and worked to teach her to arrive at work punctually and dress and interact with others appropriately. She testified that Plaintiff got along well with a schizophrenic patient who had no demands and expectations, but that she did not do well with high-functioning clients, one of whom had fired Plaintiff because she forgot things.

Ms. Rothgery testified that she had researched Plaintiff's past jobs, and had found that she was slow and seemed to become confused easily. She said that Plaintiff had high levels of anxiety, froze and blocked things out, and had somatic symptoms when she was stressed. Ms. Rothgery added that Plaintiff had difficulty remembering things, and needed to have instructions repeated again and again.


3. **Vocational Expert**

The ALJ posed a vocational hypothetical describing an individual with Plaintiff's age, education, and work experience who could perform light exertional level work. The VE testified that the individual described could perform Plaintiff's past relevant work as a film machine operator and retail sales clerk. In response to questioning by Plaintiff's counsel, the VE testified

that an individual who worked at one-third the pace of an average worker "would be replaced very quickly," and that employers would tolerate no more than one absence per month.

.                                **ALJ's Decision**

At the first step of his disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 1, 2007.[2]

At the second step, the ALJ found that Plaintiff had the following severe impairments: obesity, diabetes mellitus with peripheral neuropathy, major depressive disorder with psychotic symptoms (controlled), PTSD (controlled), mild cognitive disorder, and borderline intellectual functioning.

At the third step, he found that, alone or in combination, Plaintiff's impairments did not meet or equal a presumptively disabling impairment set out in the "listings," 20 C.F.R. Part 404, Subpart P, Appendix 1.

Before proceeding to the fourth step, the ALJ assessed Plaintiff's residual functional capacity (RFC). He found that Plaintiff retained the functional capacity required to perform light, unskilled work. In reaching this conclusion, he found that Plaintiff's description of the severity of her symptoms and impairments was not credible to the extent that it was inconsistent with that finding.

At the fourth step of his disability analysis, the ALJ found that Plaintiff could perform her past relevant work as a film machine operator, as the job was generally performed. Based upon that conclusion, he found that Plaintiff was not disabled within the meaning of the Act.

_____

[2]As noted above, Plaintiff initially alleged that she had been disabled since January 1, 2007. In a memorandum submitted to the ALJ before the hearing, Plaintiff amended the alleged onset of disability date to September 1, 2007.

**Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The initial burden of proof rests upon the claimant to establish his or her disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  The Commissioner bears the burden of developing the record.  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation."  Andrews, 53 F.3d at 1039-40.

**Discussion**

Plaintiff contends that the ALJ erred in failing to address statements submitted by two lay witnesses, failing to credit the opinions of an examining physician and examining psychologists, failing to properly support his finding that Plaintiff was not wholly credible, failing to credit the

opinions of treating nurse practitioners and a treating counselor, and in finding that Plaintiff

could perform her past relevant work as a film machine operator.


A. **Lay Wtiness Evidence**

Samuel Burdick, Plaintiff's son, completed an Agency questionnaire describing his

mother's symptoms and impairments.  Burdick reported that Plaintiff needed to be reminded to

get up, eat, do household chores, and take care of her medications.  He stated that Plaintiff's

memory had worsened, that Plaintiff was difficult to communicate with, and that Plaintiff could

maintain attention for only 2 to 5 minutes at a time.  Burdick stated that Plaintiff did not handle

stress or change well, and that she depended on routine and panicked if her routine was altered.

Dee Dee DuRousseau, a friend, also submitted a statement to the Agency.   She reported

that Plaintiff needed to be reminded to groom herself and do household chores.  DuRousseau

stated that Plaintiff could not remember things for more than 5 minutes.

The Commissioner does not dispute Plaintiff's assertion that the ALJ's decision made no

explicit reference to these lay witnesses.  However, the Commissioner contends that the ALJ's

assertion that he had "considered" all of Plaintiff's symptoms, coupled with his review of the

medical record, provided an adequate basis for rejecting these witnesses' description of

Plaintiff's limitations.  In support of this contention, the Commissioner cites medical evidence

which he contends is inconsistent with this lay witness evidence.

This argument fails.  An ALJ must provide reasons that are "germane" for rejecting the

statements of lay witnesses whose description of a claimant's limitations are not accepted.  E.g.,

Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996).  The Commissioner cannot rely on a

rationale that has not been asserted by the ALJ or the Appeals Council, see Connett v. Barnhart,

340, F.3d 871, 874 (9th Cir. 2003), and cannot reasonably contend that an ALJ has provided "germane" reasons for the rejection of witness statements that an ALJ has not even acknowledged. See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (ALJ cannot disregard lay testimony without comment).

The statements of Burdick and DuRousseau supported Plaintiff's description of her impairments and her assertion that she is disabled, and the ALJ's failure to address them cannot be characterized as "harmless error." As further examination of the ALJ's decision below will demonstrate, the failure to address these witness statements is one of a number of errors that require that this action be remanded for an award of benefits.

### B. **Opinions of Drs. Brewster, Nothway, Prescott, and Boyd**

Plaintiff contends that the ALJ failed to support his rejection of opinions of several examining doctors.

The opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990). An ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinions of an examining physician, id., and must support the rejection of an examining physician's opinion that is contradicted by another physician with specific and legitimate reasons that are supported by substantial evidence in the record. Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

### 1. **Dr. Brewster**

Dr. Brewster, who examined Plaintiff at the request of the Agency, opined that Plaintiff was limited to occasional fine and gross motor manipulations. The ALJ rejected this conclusion

FINDINGS AND RECOMMENDATION - 17

on the grounds that Plaintiff's daily activities, including the work she did as a cleaner and care giver, demonstrated that Plaintiff's manipulative abilities were not limited.

Plaintiff's assertion that the ALJ did not adequately support his rejection of Dr. Brewster's opinion is well founded.  Plaintiff worked only a few hours of work per week, in a non-competitive work environment, and her testimony that she dropped things and could not handle pots and pans on days when her hands were bothering her is consistent with the medical record.  That record establishes that Plaintiff has severe peripheral neuropathy which could be expected to limit her ability to manipulate objects, and objective testing demonstrated that Plaintiff's manual dexterity was "well in the impaired range and noticeably below the first percentile bilaterally."  Dr. Brewster's opinion concerning Plaitniff's manipulative limitations was not contradicted by any other examining physician or by any of Plaintiff's treating doctors. The ALJ's reason for rejecting the Dr. Brewster's opinion as to Plaintiff's manipulative limitations was not clear and convincing, and was not supported by substantial evidence.


## 2. **Dr. Northway**

Dr. Northway, an examining psychologist, found that Plaintiff was "easily confused" and processed information "extremely slowly."  The ALJ did not directly address these findings, but rejected them by implication by failing to include any related limitations in his assessment of Plaintiff's RFC or in the vocational hypothetical he posed to the VE.

The Commissioner contends that the ALJ did not err in failing to address Dr. Northway's opinion because he had not "provided an opinion as to how Plaintiff's impairments impacted her ability to perform work activities by recommending a particular residual functional capacity finding."  He also contends that the ALJ did not err because he "discussed the recommendations

for the residual functional capacity finding provided by the non-examining psychologists." The Commissioner adds that the ALJ "discussed all of the medical evidence in the file" and asserts that his findings were consistent with those of non-examining Agency consultants.

These contentions fail. The Commissioner has neither cited, nor am I aware of, any authority for the proposition that an ALJ may ignore an examining physician's opinion simply because it is not expressed in terms of a specific functional limitation. It is the role of the ALJ, not these physicians, to specifically assess a claimant's residual functional capacity based upon the medical evidence. In ignoring the opinion of Dr. Northway, the ALJ here failed to do so. Moreover, the ALJ's discussion of non-examining physicians' assessments of Plaintiff's RFC could not cure this failure, because a non-examining physician's opinion "cannot by itself constitute substantial evidence that justifies rejection of the opinion of either an examining physician or a treating physician." Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995); see also, Pitzer v. Sullivan, 908 F.2d 502, 506 n. 4 (9th Cir. 1990) (without more, opinion of non-examining doctor does not constitute substantial evidence).


### 3. Dr. Prescott

Dr. Prescott, an examining psychologist, found that Plaintiff was "easily distracted," and that Plaintiff's short-term memory and concentration were impaired. Though the ALJ mentioned these findings, he gave no reason for the rejection that was implied by their omission from Plaintiff's RFC.

The Commissioner argues that the ALJ did not err as to Dr. Prescott for the same reasons discussed above concerning Dr. Northway. Those arguments fail for the reasons set out above.

4. **Dr. Boyd**

Dr. Boyd, an examining psychologist, found that Plaintiff's verbal skill were in the impaired range, and that her performance on a test of manual dexterity was "noticeably below the 1st percentile, bilaterally."  The ALJ did not mention these findings or cite any grounds for rejecting Dr. Boyd's opinions.

The Commissioner relies on the arguments concerning Drs. Northway and Prescott noted above, which fail for the same reasons discussed above.

**Effect of these errors**

Where, as here, an ALJ fails to provide adequate reasons for rejecting the opinions of an examining physician, that opinion is credited "as a matter of law." Lester, 81 F3d at 834 (9th Cir. 1996).  The court then has the discretion to remand for an award of benefits or for further proceedings.  See, e.g., Stone v. Heckler, 761 F.2d 530, 533 (9th Cir. 1985).  Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional Agency consideration.  Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000).  If there are no outstanding issues to be resolved before a determination of disability can be made and it is clear from the record that the ALJ would be required to find the claimant disabled if the opinion were credited, remand for an award of benefits is appropriate.  Smolen, 80 F.3d at 1292.

Here, there are no outstanding issues that need to be resolved in order for a determination of disability to be made, and an ALJ who credited the opinions of Drs. Brewster, Northway, Prescott, and Boyd would be required to find that Plaintiff is disabled.  Though all of these examining doctors' opinions support the conclusion that Plaintiff is disabled, the opinions of Brewster and Boyd most conclusively require a finding of disability, because the manipulative

FINDINGS AND RECOMMENDATION - 20

limitations these doctors found would preclude performance of Plaintiff's past relevant work as a film machine operator, and a finding of disabled is required if Plaintiff cannot perform any of her past relevant work.  According to the Dictionary of Occupational Titles, the film machine operator position requires "frequent" handling, feeling, and fingering, and requires fingering dexterity at the level of "the middle one-third of the population."  Dictionary of Occupational Titles 976-685-014.  Dr. Brewster found that Plaintiff was limited to occasional fine and gross motor manipulations, and Dr. Boyd found that Plaintiff's manual dexterity was below the 1st percentile.

The film machine operator position was the only past relevant work that the ALJ found that Plaintiff could perform.  If Plaintiff cannot perform that work, she must be found to be disabled according to the Medical-Vocational Rules (the grids).  Plaintiff was 55 years old when the ALJ issued his decision, could not perform her past relevant work, was limited to light level work, had a high school education that did not provide for direct entry into skilled work, and had no transferable skills  This requires a finding of disability under Rule 202.06, 20 C.F.R. Pt. 404, Subpt. P, Appendix 2.

My conclusion that the ALJ's failure to properly support his rejection of the opinions of examining physicians makes it unnecessary to reach Plaintiff's remaining contentions.  However, in order to create a full record for review, I will briefly address the ALJ's credibility determination as well.

## C. Assessment of Plaintiff's Credibility

As noted above, the ALJ found that Plaintiff's description of her symptoms and impairments was not credible to the extent that it was inconsistent with his assessment of her

RFC.  Plaintiff contends that the ALJ did not provide the required support for this determination.

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  If a claimant produces medical evidence of an underlying impairment that is reasonably expected to produce the symptoms alleged, and there is no affirmative evidence of malingering, an ALJ must provide "clear and convincing reasons" for an adverse credibility determination.  Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). If substantial evidence supports the ALJ's credibility determination, that determination must be upheld, even if some of the reasons cited by the ALJ are not correct.  Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1162 (9th Cir. 2008).

An ALJ must examine the entire record and consider several factors, including the claimant's daily activities, medications taken and their effectiveness, treatment other than medication, measures other than treatment used to relieve pain or other symptoms, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms."  SSR 96-7.

Because Plaintiff produced evidence of underlying impairments that could be reasonably expected to cause the symptoms alleged and there was no evidence of malingering, the ALJ was required to provide clear and convincing reasons for his credibility determination.  The ALJ asserted that Plaintiff was not wholly credible because her activities of daily living, including working, were inconsistent with her allegations;  a former employer had reported that Plaintiff did not require above average supervision and interacted appropriately with coworkers and supervisors; Plaintiff accepted unemployment benefits while alleging that she was disabled

within the meaning of the Act; and Plaintiff was able to live independently and cook, clean, shop, and attend church and "had no difficulty with hygiene or grooming."

These are not clear and convincing reasons for discounting Plaintiff's credibility. Plaintiff's activities of daily living and the very part-time work she was doing at the time of the hearing, as described by Plaintiff, lay witnesses whose statements the ALJ did not address, and the counselor who supervised Plaintiff, were not inconsistent with the level of impairment that Plaintiff alleged. Though Plaintiff was able to cook, clean, shop, and work a few hours a week, there was no evidence that Plaintiff was able to carry out those activities in a manner that was consistent with the ability to sustain full time competitive employment, or inconsistent with Plaintiff's description of her impairments. The record does include a form submitted by a temporary work agency through which Plaintiff worked a few months in 2008 indicating that Plaintiff required no more than average supervision and interacted appropriately. However, Plaintiff was also described as "slow in production," and Plaintiff's assertion that the agency told her "not to come back" after her last assignment ended is uncontroverted. Plaintiff's assertion she was terminated from several positions after a short time for unsatisfactory performance was also uncontroverted. Moreover, a claimant's acceptance of unemployment benefits while seeking disability benefits does not provide a basis for discounting credibility where, as here, the record does not indicate whether the claimant asserted that she was available for full-time work. Carmickle, 533 F.3d at 561-62.

When an ALJ provides legally inadequate reasons for discounting a claimant's testimony, there are no other outstanding issues to be resolved, and it is clear that a finding of disability would be required if the testimony were credited, remand for an award of benefits is appropriate. E.g., Moisa v. Barnhart, 367 F.3d 882, 887 (9th Cir. 2004). Here, the ALJ did not provide a

legally sufficient basis for discounting Plaintiff's testimony, and clearly would have been required to find Plaintiff disabled if he had credited her testimony.  There are no other issues that need to be resolved on remand.  Remand for a finding of disability and an award of benefits is therefore appropriate.

## **Conclusion**

A judgment should be entered REVERSING the decision of the Commissioner and REMANDING this action to the Agency for an award of benefits.

## **Scheduling Order**

This Findings and Recommendation will be referred to a district judge.  Objections, if any, are due August 6 , 2012.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 18th day of July, 2012.


   /s/ John Jelderks                                  
John Jelderks
U.S. Magistrate Judge

FINDINGS AND RECOMMENDATION - 24